# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re: Patriot Coal Corporation, *et al.,*      15-32450-KLP
          Debtors.                         Chapter 11
                                         Jointly Administered

Eugene Davis, solely in his
capacity as Liquidating Trustee
for the PCC Liquidating Trust,
      Plaintiff,

v.                                     Adv. Pro. No. 16-03109-KLP

West Virginia State Tax Department,
      Defendant.

## <u>MEMORANDUM OPINION</u>

Plaintiff, Eugene Davis, liquidating trustee (the "Trustee") for the PCC Liquidating Trust (the "Liquidating Trust"), successor-in-interest to Patriot Coal Corporation ("Patriot"), Panther, LLC ("Panther"), Catenary Coal Company ("Catenary"), and Coyote Coal Company ("Coyote") (collectively, the "Debtors"), filed a "Complaint for Turnover of Tax Refund" (the "Complaint") against the West Virginia State Tax Department  (the "Tax Department") seeking the turnover of at least $5,082,011.72 in tax refunds and interest.  In response, the Tax Department filed a motion to dismiss (the "Motion to Dismiss"), contending that the Complaint must be dismissed because this Court lacks jurisdiction to adjudicate the Trustee's claims on the basis of sovereign immunity.  Alternatively, in the Motion to Dismiss, the Tax Department contends that the Court should abstain from adjudicating the Trustee's claims.  For the reasons set forth below, the Motion to Dismiss will be granted.[1]

---

[1] The Court is not required to state findings or conclusions upon entry of an interlocutory order ruling on a motion under Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 52(a)(3), made applicable to this proceeding by Fed. R. Bankr. P. 7052.

BACKGROUND

The Tax Department seeks dismissal for lack of subject matter jurisdiction under Rule

12(b)(1).[2]  When, as here, the jurisdictional facts are not in dispute, the Fourth Circuit has held

that "the facts alleged in the complaint are taken as true, and the motion must be denied if the

complaint alleges sufficient facts to invoke subject matter jurisdiction."[3]  In connection with its

analysis, the Court may consider the documents attached to the Complaint and the Motion to

Dismiss "so long as they are integral to the complaint and authentic."[4]  Viewed as such, the

Trustee alleges the following facts.

On July 9, 2012, Patriot and 100 of its affiliates commenced voluntary cases under

chapter 11 (the "Prior Cases") in the U.S. Bankruptcy Court for the Southern District of New

York.  On December 19, 2012, these cases were transferred to the U.S. Bankruptcy Court for the

Eastern District of Missouri (the "Missouri Bankruptcy Court").  During the pendency of the

Prior Cases, the Tax Department filed proofs of claim against fifteen entities, including the

Debtors.[5]  On November 4, 2013, the parties entered into a settlement agreement (the

"Settlement Agreement") that resolved all claims that the Tax Department had asserted against

the fifteen entities.  The Settlement Agreement, which was noticed and approved in accordance

with the requirements of the Missouri Bankruptcy Court's Claims Settlement Order, released the

---

[2] Both parties maintain that it is unclear whether subparagraph (1) or (6) of Rule 12(b) is applicable when
considering a motion to dismiss on sovereign immunity grounds.  The Tax Department does not specifically contend
that the Complaint must be dismissed on the grounds that the Trustee has failed to state a claim upon which relief
can be granted pursuant to Fed. R. Bankr. P. 12(b)(6) but instead bases the Motion to Dismiss on sovereign
immunity grounds.  The constitutional principle of state sovereign immunity limits the Article III jurisdiction of the
federal courts.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64 (1996).  Thus, a motion to dismiss on the basis of
sovereign immunity disputes subject matter jurisdiction and generally would be properly raised by motion pursuant
to Rule 12(b)(1).  In this case, however, the Court finds that Rule 12(b)(6) is implicated.
[3] *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).
[4] *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing Fed. R. Civ. P. 10(c)).
[5] Copies of the proofs of claim filed by the Tax Department are attached as Exhibit A to the Motion to Dismiss.  The
proofs of claim filed against Coyote and Panther included claims for coal severance taxes related to the year 2012.
In the instant adversary proceeding, the Debtors seek tax refunds for severance taxes allegedly overpaid in 2012.
The Debtors also seek a severance tax refund for Catenary for the tax year 2011.  These periods are encompassed in
the proof of claim filed by the Tax Department in the Prior Cases.

Tax Department's claims and causes of action in exchange for allowed priority and unsecured claims against the Debtors. In section 7 of the Settlement Agreement, the parties agreed that the Missouri Bankruptcy Court would retain jurisdiction with respect to any disputes arising from or other actions to interpret, administer or enforce its terms.[6]

On February 6, 2015, Catenary, Coyote and Panther filed a Motion to Enforce the Settlement Agreement (the "Enforcement Motion") in the Missouri Bankruptcy Court. They alleged that they were entitled to tax refunds related to overpayment of coal severance taxes for the tax years 2011 and 2012 and that the Tax Department refused to pay the refund claims, in part, because of its erroneous understanding that it had been released from the refund claims pursuant to the Settlement Agreement. In its response to the Enforcement Motion, the Tax Department conceded that the Settlement Agreement did not preclude issuing the refunds but disputed the amounts claimed. The Tax Department asked that a hearing on the Enforcement Motion scheduled for March 2, 2015, be continued to allow the parties an opportunity to resolve the refund issues. In response to the Tax Department's concession, the Debtors withdrew the Enforcement Motion.

On May 12, 2015, Patriot and certain of its subsidiaries (including Panther, Catenary and Coyote) filed voluntary petitions under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Virginia.[7] On October 9, 2015, the Court confirmed the Debtors' Fourth Amended Joint Plan of Reorganization (the "Plan"). Pursuant to the Plan, all of the assets of the Debtors' estates that were not sold, abandoned, or otherwise transferred

---

[6] On December 18, 2013, the Missouri Bankruptcy Court entered an amended order confirming Patriot and its affiliates' Fourth Amended Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code. The effective date of the plan occurred on December 18, 2013.

[7] By Order entered May 13, 2015, the Court approved the joint administration of the related bankruptcy cases.

vested in the Liquidating Trust on October 26, 2015, the effective date of the Plan.  The Trustee

is the duly appointed trustee for the Liquidating Trust.

The Trustee claims that the Tax Department owes Panther a severance tax refund for tax

year 2012, Catenary a severance tax refund for tax year 2011, Coyote a severance tax refund for

tax year 2012, and Patriot a business franchise tax refund for tax year 2014.  In total, the Tax

Department is alleged to be in possession of at least $5,082,011.72 in tax refunds and interest

due and owing to the Liquidating Trust.  Despite continuous demands for payment beginning in

March 2014, the Tax Department has refused to pay the tax refunds.

In the Complaint, the Trustee alleges that the tax refunds owed to Panther, Patriot,

Catenary and Coyote constitute property of the estate under 11 U.S.C. § 541 that is due and

owing to the Liquidating Trust and is therefore subject to turnover pursuant to 11 U.S.C. § 542.

He further alleges that more than 120 days have passed since the Plaintiff properly requested the

return of the tax refunds and that because the Tax Department has refused the refund request, this

Court may determine the refund liability under 11 U.S.C. § 505(a)(2)(B) and require the Tax

Department to turn over the tax refunds.

On June 13, 2016, the Tax Department filed the Motion to Dismiss, in which it asserts

that the Debtors and the Trustee failed to properly apply for the alleged refunds in accordance

with state law and that the Trustee is seeking refunds that were properly set off against taxes

owing before the Prior Cases were filed.  The Tax Department also states that it did not file a

proof of claim in Patriot's 2015 bankruptcy case despite being owed a balance of approximately

$10,000,000 in coal severance taxes pursuant to the Settlement Agreement.

The Tax Department contends that regardless of the substance of the refund claims, the

Complaint violates the sovereign immunity of the State of West Virginia under the Eleventh

Amendment and must be dismissed.  Alternatively, the Tax Department contends that the Court

should abstain from hearing this suit pursuant to 28 U.S.C. § 1334(c)(1).

DISCUSSION

The district courts of the United States have original and exclusive jurisdiction "of all

cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising

under title 11, or arising in or related to cases under title 11."[8]  The United States District Court

for the Eastern District of Virginia has referred all such proceedings to this Court under its

General Order of Reference entered August 16, 1984.  Accordingly, this Court has authority to

hear and determine this matter and enter an appropriate order.[9]

On its face, the Trustee's claim appears to be within this Court's core jurisdiction because

it is an action brought pursuant to § 542 of the Bankruptcy Code.[10]  Although the claim is now

vested in the Liquidating Trust, the post-confirmation nature of this suit would not in itself

deprive the Court of subject matter jurisdiction, since the Trustee's claim has a close nexus to

this bankruptcy case and directly affects distributions under the Plan.[11]  Nevertheless, the Tax

---

[8] 28 U.S.C. § 1334.

[9] 28 U.S.C. § 157(b)(1).

[10] *See* 28 U.S.C. § (b)(2)(E).  However, the Fourth Circuit Court of Appeals has cautioned that courts must look beyond the statutory text of 28 U.S.C. § 157(b)(2) in order to determine whether a bankruptcy proceeding is core or non-core.  *See Humboldt Express, Inc. v. Wise Co. (In re Apex Express Corp.),* 190 F.3d 624, 632 (4th Cir. 1999)) ("The main justification . . . is that because the accounts receivable are in some sense the property of the bankruptcy estate, and because the outcome of the claim will affect the bankruptcy estate . . . , then the claims are 'core' . . . . But, under this logic any claim involving a potential money judgment would be considered core, even the precise contract claim at issue in *Northern Pipeline*.");  *see also Hudgins v. Shah (In re Systems Eng'g & Energy Mgmt. Assoc., Inc.),* 252 B.R. 635, 643 (Bankr. E.D. Va. 2000) ("In determining whether a proceeding is core or non-core, both the form and substance of the proceeding must be examined.") (citations omitted).  As this Court observed in *Smith v. McLeskey (In re Bay Vista of Va., Inc.),* 394 B.R. 820 (Bankr. E.D. Va. 2008), although a proceeding for turnover of estate property is designated a core proceeding by 28 U.S.C. § 157(b)(2)(E), "[a]n unliquidated, disputed state law cause of action . . . is a non-core, related proceeding and is not the proper subject of a turnover proceeding."  *Id.* at 831 n.5 (quoting *Roddam v. Metro Loans, Inc. (In re Roddam)*, 193 B.R. 971, 977 n.7 (Bankr. M.D. Ala. 1996), which cited *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir. 1990)).

[11] *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836-37 (4th Cir. 2007).

Department asserts that the Court lacks jurisdiction to adjudicate this matter due to sovereign

immunity.

### *Sovereign Immunity*

The Eleventh Amendment to the United States Constitution provides "[t]he Judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  As a general rule, the

Eleventh Amendment's principle of sovereign immunity prevents federal courts, including

bankruptcy courts, from entering money judgments against a state.[12]  A state's sovereign

immunity can, however, be waived.[13]

In the Bankruptcy Reform Act of 1994,[14] Congress revised and enacted the current

version of 11 U.S.C. §106.[15]  Subsection (a) of § 106 abrogates the sovereign immunity of all

---

[12] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.");  *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944) ("when we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.").

[13] *See, e.g., U.S. v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992); *Gardner v. New Jersey*, 329 U.S. 565, 574 (1947).

[14] Pub L. No. 103-394, 108 Stat. 4106 (1994).

[15] 11 U.S.C. §106:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
>
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
>
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
>
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

governmental units with respect to certain sections of the Bankruptcy Code, including the turnover provisions of § 542.

In 1996, the Supreme Court, in *Seminole Tribe of Florida v. Florida*,[16] determined that Congress has no authority under Article I of the Constitution to abrogate a state's sovereign immunity but held that it may do so when it is acting pursuant to its enforcement power under the Fourteenth Amendment. Citing *Seminole Tribe*, the Fourth Circuit, in *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C.)*,[17] found that Congress enacted § 106(a)'s abrogation of state sovereign immunity pursuant to its power under Article I's Bankruptcy Clause[18] rather than its authority under the Fourteenth Amendment and, therefore, "Congress' effort to abrogate the states' Eleventh Amendment immunity through its 1994 enactment of 11 U.S.C. § 106(a) [was] unconstitutional and ineffective."[19]

Later, recognizing that Eleventh Amendment protections only apply to judicial proceedings constituting a "suit," the Fourth Circuit in *In re NVR, LP*,[20] developed a general test for determining whether a federal judicial action must be deemed a suit against the state. The Fourth Circuit held that from a procedural standpoint, a court should consider "the degree of coercion exercised by the federal court in compelling the state to attend" and "whether the

---

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

[16] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).

[17] *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C.)*, 119 F.3d 1140 (4th Cir. 1997).

[18] U.S. Const., art.I, § 8, cl. 4.

[19] 119 F.3d at 1147.

[20] *NVR Homes, Inc., v. Clerks of the Circuit Courts (In re NVR, LP)*, 189 F.3d 442 (4th Cir. 1999).

resolution, or the remedy, would require . . . jurisdiction over the state."[21]  The court further held

that from a substantive standpoint, a court should examine whether the action involves "'the

prosecution of some demand in a Court of justice,' as opposed to the orderly disposition of an

estate, with the states' role limited to that of any other creditor."[22]

     *NVR* establishes that where the substance of a proceeding in bankruptcy court may

impact a state's treasury, it will likely be considered a suit against the state for purposes of the

Eleventh Amendment.[23]  As the Fourth Circuit stated, "[a]lthough federal law may reign

supreme in the bankruptcy context, the federal courts do not necessarily reign supreme over an

unconsenting state's treasury."[24]

     The Tax Department contends that under *Schlossberg*, § 106(a) does not abrogate

sovereign immunity in connection with the Trustee's action.  Additionally, the Tax Department

argues that, under *NVR*, the Trustee's action should be considered a suit against the State of West

Virginia because it will impact its state treasury.  Thus, the Tax Department argues that

sovereign immunity bars the Trustee's action.

---

[21] *Id*. at 452.

[22] *Id*. at 452 (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 407 (1821)).  The plaintiff in *NVR* was a former chapter 11 debtor who moved for a declaration from the bankruptcy court that it was exempt from recordation taxes it had paid to state taxing authorities in connection with transfers of real property.  The Fourth Circuit noted that the action had been commenced as a motion pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure, a proceeding that would not, in itself, amount to a suit against the states.  189 F.3d at 453.  Nevertheless, the court found that unless the federal court action could result in an order requiring the states to return the tax payments, a pronouncement that the states are required to do so would amount to an improper advisory opinion.  *Id*.  The Fourth Circuit found that in order to grant an effective remedy, the bankruptcy court must have the ability to exercise jurisdiction over the states and compel the turnover of the tax payments, an action it deemed to be a "suit against the states." *Id.*

[23] *Id*. at 454:

> [D]espite the fact that neither Maryland nor Pennsylvania suffered the indignity of being summoned to appear in a federal court, we determine that they are immune from prosecution of NVR's Rule 9014 motion.  The motion initiated a "contested matter" pitting Maryland and Pennsylvania against NVR, a citizen of their own state or of another state.  The "suit" clearly sought a determination that the states owned NVR money—repayment of exempt transfer and recordation taxes—and a favorable decision would require that a federal court raid Maryland's and Pennsylvania's treasuries.  Because NVR "commenced or prosecuted" a suit against the states, sovereign immunity applies, and the suit is barred as to the states.

[24] *Id*. at 453.

The Trustee counters that the Supreme Court's decision in *Central Virginia Community College v. Katz,*[25] decided after the Fourth Circuit's *Schlossberg* and *NVR* decisions, makes the defense of sovereign immunity inapplicable to this case. Looking beyond its opinion in *Seminole Tribe*, the Supreme Court in *Katz* held that the states' ratification of the Constitution, and the Bankruptcy Clause contained within it, resulted in a waiver of sovereign immunity in the area of bankruptcy. More particularly, the Court found that the ratification of the Constitution evidenced the states' consent to the bankruptcy courts' *in rem* jurisdiction to collect and distribute property of the bankruptcy estate. The Trustee asserts that this turnover action is permissible under *Katz* because it seeks to collect, and thereafter distribute, the Debtors' tax refunds.

The debtor in *Katz* did business with state-run institutions of higher education in Virginia. The trustee filed adversary proceedings against the institutions, seeking to set aside and recover alleged prepetition preferential transfers.[26] The Supreme Court preliminarily found that as "arm[s] of the State," the institutions were protected by sovereign immunity.[27] The Court observed, however, that "[b]ankruptcy jurisdiction, at its core, is in rem"[28] because it is "premised on the debtor and his estate, and not on the creditors,"[29] and further noted that bankruptcy courts not only have jurisdiction to make *in rem* adjudications but also have historically had "the power to issue ancillary orders enforcing their *in rem* adjudications."[30] To the extent that such orders would implicate a state's sovereign immunity from suit, the Court held that by ratifying the Constitution, the states waived sovereign immunity in at least some

---

[25] *Cent. Va. Cmty. Coll. v. Katz,* 546 U.S. 356 (2006).

[26] *Id.* at 360. The trustee proceeded under 11 U.S.C. § 547(b), which allows the trustee to avoid certain prepetition transfers to a creditor that would enable the creditor to receive a larger percentage of its claim than it would otherwise receive through the bankruptcy process.

[27] *Id.* 360 (quoting *Alden v. Maine*, 527 U.S. 706, 756 (1999)).

[28] 546 U.S. at 362.

[29] *Id.* at 370 (citation omitted).

[30] *Id.*

legal actions established under Congress's power to create uniform laws on bankruptcy.[31]  The Court found that, at the time of ratification, preference actions were understood to fall within the scope of "Laws on the subject of Bankruptcies"[32] and, therefore, the states had waived sovereign immunity in regard to preference actions.

The scope of the waiver resulting from ratification is limited, as the Court in *Katz* acknowledged, noting that "[w]e do not mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity."[33]  It is where the purpose of the bankruptcy law is to "ensure uniformity in treatment of state and private creditors" that jurisdiction "ancillary to in rem" is necessary for an effective bankruptcy process.[34]  In such cases, the states have consented to be treated equally with other creditors.[35]  The Trustee contends that this action falls within the limitations set forth in *Katz*. He argues that the tax refunds being held by the Tax Department constitute property of the estate that should be administered for the benefit of all creditors, thereby triggering the Court's *in rem* and "ancillary in rem" jurisdiction to order their turnover.

The Fourth Circuit has not directly considered the effect of *Katz* on its decision in *NVR* other than to opine that *NVR* "likely does not survive" it.[36]  It is important to bear in mind, however, that the Supreme Court in *Katz* declined to address whether Congress's attempt to abrogate state sovereign immunity in 11 U.S.C. § 106(a) is valid, and instead concluded that "the

---

[31] *Id.* at 377-78.

[32] *Id.* at 372.

[33] *Id*. at 378 n.15.

[34] *See id.* at 376 n.13.

[35] *Id.*

[36] *Carpenters Pension Fund of Baltimore v. Md. Dep't of Health,* 721 F.3d 217 (4th Cir. 2013) ("In *Katz*, the Supreme Court held that the Eleventh Amendment has limited application in the arena of federal bankruptcy jurisdiction, for the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, represented a partial cessation by the states of their sovereign immunity.  *See Katz*, 546 U.S. at 373, 126 S.Ct. 990.  Accordingly, it is doubtful that *In re NVR*, which applied the Eleventh Amendment to a bankruptcy reorganization that sought refunds of exempted taxes paid to Maryland and Pennsylvania, remains viable.")  *Id*. at 222.

enactment of [§ 106(a)] was not necessary to authorize the Bankruptcy Court's jurisdiction over these preference avoidance proceedings."[37]  Therefore, the Fourth Circuit's precedent in *Schlossberg* regarding the constitutionality of § 106(a) remains the law in this Circuit.[38]  Also left intact is the Fourth Circuit's "general test" for determining whether an action constitutes a "suit;" i.e., whether the action seeks the recovery of money from the state as opposed to situations in which "the state is merely an adjunct to a dispute that 'collaterally affects' its interests . . . ."[39]

But for the waiver by ratification exception articulated in the Supreme Court's decision in *Katz* or another form of consent, the Trustee's cause of action, which seeks the recovery of money from the Tax Department, is barred by sovereign immunity.  It follows that this Court must determine whether the Complaint is a proceeding understood to be within the scope of the

---

[37] *Katz*, 546 U.S. at 362.

[38] *See also Philadelphia Entm't & Dev. Partners, L.P. v. Pa. Dep't of Revenue (In re Philadelphia Entm't & Dev. Partners, L.P.)*, 549 B.R. 103, 121 (Bankr. E.D. Pa. 2016), in which the bankruptcy court was constrained by the prior ruling of the Third Circuit relative to sovereign immunity, holding that "[u]ntil the Third Circuit revisits the issue, this Court is obligated, consistent with the Third Circuit's opinion in *Sacred Heart*, to find that § 106(a) of the Bankruptcy Code may not be relied upon by the Trustee to defeat the Commonwealth Parties' assertion of sovereign immunity."

    Unless 11 U.S.C. § 505(a) which, pursuant to § 106(a), authorizes this Court to determine the Debtors' tax liability, falls within the consent by ratification exception set forth in *Katz*, its use continues to be barred by sovereign immunity.  The Trustee does not argue that § 505(a) contributes to uniformity in treatment of state and private creditors nor that it is necessary to ensure an effective bankruptcy process, which were the key considerations in *Katz*.  On the contrary, the Trustee argues that the Court does not need to determine the Debtors' tax liabilities, stating that the Tax Department's suggestion that it must do so "overstates the Court's role when it comes to determining the right of the Trustee to collect the tax refund."  Trustee's Response in Opposition, p. 16. Even if the Trustee were to make such an argument, the Court finds that in this case § 505(a) does not fall within the parameters set forth in *Katz*.

[39] *Carpenters Pension Fund of Baltimore*, 721 F.3d at 222 (citation omitted).

    An example is a purely in rem proceeding in which 'the state is not in possession of the property.' *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446-50, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004).  In this context, 'jurisdiction is premised on the res, not on the persona' of the states, *Hood*, 541 U.S. at 450, 124 S.Ct. 1905, while the remedy does not involve recovery from the state treasury.  *Cf. In re NCVR*, 189 F.3d at 453-54.

721 F.3d at 222 n.4.

"Laws on the subject of Bankruptcy" in which the states, as a result of ratification, waived sovereign immunity.[40]

A turnover action under § 542[41] is one deemed "essential to the process of assembling a debtor's estate as defined by § 541 of the Bankruptcy Code regardless of whether such property is in the possession of a debtor."[42]

> As confirmed by *Katz* the fundamental purpose of bankruptcy is the collection of a debtor's estate and distribution of estate assets among the estate's creditors. *Katz,* 546 U.S. at 362, 126 S.Ct. 990 ("the jurisdiction of courts adjudicating rights in the bankrupt estate included the power to issue compulsory orders to facilitate the administration and distribution of the *res*."); *see also* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction ... of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate...."); *Gardner v. New Jersey,* 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947) ("The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*."). The *in rem* nature of turnover actions therefore renders sovereign immunity generally inapplicable to turnover actions.[43]

An action by a trustee seeking the turnover of property of the estate held by a state agency is consistent with enforcing the principle of creditor equality and essential to effectuating the core purposes of bankruptcy.  Thus, under *Katz*, sovereign immunity would ordinarily be inapplicable in a § 542 turnover action.[44]

---

[40] *Carpenters Pension Fund* did not address the Bankruptcy Code's implications on sovereign immunity under the Bankruptcy Code, but rather arose from a federal garnishment action against a state health department.

[41] The relevant portion of § 542 reads:
> a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542.

[42] *Philadelphia Entm't*, 549 B.R. at 123.

[43] *Id.*

[44] 546 U.S. at 372 ("A court order mandating turnover of the property, although ancillary to and in furtherance of the court's *in rem* jurisdiction, might itself involve *in personam* process.").

A closer examination of the Complaint reveals, however, that the Trustee may not merely be seeking the turnover of the tax refunds but also a determination that those refunds are owed. The Tax Department points to paragraph 26 of the Complaint, which alleges that:

> [m]ore than 120 days have passed since the [Debtors] properly requested the return of the tax refunds from the W.V. Tax Department.  The W.V. Tax Department has refused to return the [Debtors'] tax refunds.  Pursuant to Section 505(a)(2)(B) of the Bankruptcy Code, the Bankruptcy Court may determine such refund liability and require the W.V. Tax Department to turn over the tax refunds.

This allegation, according to the Tax Department, establishes that "the essential purpose of the Trustee's suit is to invoke this court's power to interpret and enforce State law under section 505 of the Bankruptcy Code . . ." in a case that does not resolve a disputed proof of claim.[45]  Citing a case recently decided by the Bankruptcy Court for the Eastern District of Pennsylvania, *Philadelphia Entertainment and Development Partners, L.P., v. Pennsylvania Department of Revenue*,[46] the Tax Department maintains that because the Trustee's entitlement to the tax refunds has not been finally determined, there is no identifiable and undisputed property of the bankruptcy estate that would give rise to a § 542 turnover action.  Therefore, according to the Tax Department, the Complaint is nothing more than a contractual suit seeking a money judgment against the state that is prohibited by the Fourth Circuit's decision in *NVR* rather than an action permitted under *Katz*.

In *Philadelphia Entertainment,* a liquidating trustee appointed pursuant to a confirmed chapter 11 plan sought to recover a license fee paid to the Pennsylvania Gaming Control Board for a slot machine license.  The license had been revoked by the Gaming Board prior to the bankruptcy filing, and the trustee claimed that the revocation was unlawful because it did not include a refund of the license fee.  The trustee asserted numerous causes of action against the

---

[45] Motion to Dismiss, p. 12.
[46] 549 B.R. 103 (Bankr. E.D. Pa. 2016).

Commonwealth of Pennsylvania, including one requiring the turnover of the fee pursuant to

Bankruptcy Code § 542.  The Commonwealth moved to dismiss the trustee's complaint pursuant

to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing, in part, that the application of sovereign

immunity rendered the Commonwealth immune from suit.[47]  The Commonwealth also argued

that the § 542 cause of action should be dismissed because the license fee was not the

acknowledged property of the bankruptcy estate. [48]

Despite acknowledging that under *Katz*, the *in rem* nature of a well-plead turnover action

will generally render sovereign immunity inapplicable,[49] the court in *Philadelphia Entertainment*

held that in order to survive a motion to dismiss there must be sufficient allegations to establish

that the state is in possession of undisputed property of the bankruptcy estate.[50]  After

determining that the trustee's complaint did not include these necessary allegations,[51] the court

dismissed the § 542 turnover action for failure to state a claim.  "To be entitled to relief, the

Trustee must have alleged an undisputed right to recover the alleged property.  If a legitimate

dispute as to ownership of the property exists, §542(a) relief is unavailable."[52]

Other courts have confirmed that a "properly invoked" turnover action involves an effort

to recover property that is already property of the estate that, in turn, "invokes the court's *in rem*

---

[47] *Id*. at 112.

[48] *Id*. at 113.

[49] *Id*. at 123.  The court noted, however, that the deposit of the license fee into the state's treasury may have resulted in the fee no longer amounting to a *res* to which the court's *in rem* jurisdiction would attach (citing *United States v. Nordic Vill., Inc*., 503 U.S. 30, 38-39 (1992)).  549 B.R. at 123 n.26.

[50] 549 B.R. at 142 (citing Fed. R. Civ. P. 8 and numerous cases).  *See also In re Hechinger Inv. Co. of Del., Inc., v. Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.)*, 282 B.R. 149, 161-62 (Bankr. D. Del 2005) ("'Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate.'  *In re Asousa P'ship*., 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001);  *see also In re Rosenzweig*, 245 B.R. 836, 839–40 (Bankr. N.D. Ill. 2000). It is not a remedy available to recover claimed debts which remain unliquidated and/or in dispute.").

[51] 549 B.R. at 150.  The turnover action "constitutes an improper attempt to avoid the application of sovereign immunity and to obtain the adjudication of the Debtor's underlying non-bankruptcy causes of action that the Trustee believes entitles the Debtor to a refund . . . ."  *Id*. at 143.

[52] *Id*. at 143 (citations omitted).

jurisdiction over the bankruptcy *res*."[53]  When improperly invoked, there is a possibility that a

trustee may be using a turnover action as a "Trojan Horse" to "recover assets with disputed title

when the estate's claim is legitimately debatable."[54]  Such was the case in *Philadelphia*

*Entertainment*, in which the court determined that the trustee had cloaked his underlying state

law cause of action "in the guise of a §542 action" in order to have the bankruptcy court

adjudicate the underlying claim.  This, in the opinion of the court, "underscore[d] the viability of

the Defendants' sovereign immunity defense."[55]

        The Trustee relies on *In re Kids World of America, Inc. v. Georgia (In re Kids World of*

*America, Inc.)*, 349 B.R. 152 (Bankr. W.D. Ky. 2006), in which the court determined that

sovereign immunity did not provide a defense in connection with a claim brought pursuant to 11

U.S.C. § 542(b).  The debtor in *Kids World* sought the turnover of funds from a state agency,

arguing that the agency owed it a debt that was mature and payable on demand.  The court found

that *Katz* prohibited the state agency from asserting sovereign immunity to the turnover action,

determining that the suit was not "a state law claim wrapped in the clothing of a bankruptcy

action, but an action that arises under the language of the Bankruptcy Code itself."[56]  After

finding that the action constituted a core proceeding under 28 U.S.C. § 157(b)(2)(A), the court,

citing *Katz*, held that a § 542 turnover action "is unquestionably an action arising under one of

the 'laws on the subject of Bankruptcies' for which the framers of the Constitution did not intend

---

[53] *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 851-52 (Bankr. S.D.N.Y. 2013).
[54] *Id*. at 851 n.39.
[55] *Philadelphia Entm't*, 549 B.R. at 150 n.55.
[56] *In re Kids World of Am., Inc. v. Georgia (In re Kids World of America, Inc.)*, 349 B.R. 152, 163 (Bankr. W.D. Ky. 2006).

sovereign immunity to extend."[57]  The court then considered whether the allegations stated the

existence of a mature debt, finding that they did.[58]

The Court has closely examined the Trustee's cause of action in order to determine its

true nature.[59]  Unlike the facts of *Kids World*, in which the court found that the debtor's

allegations stated the existence of a mature debt as required under § 542(b),[60] in the instant

action, the Trustee's Complaint falls short of establishing the existence of a "matured debt"

within the meaning of § 542(b).[61]  Similar to the court's observations in *Philadelphia*

*Entertainment*, this Court is not obligated to accept the Trustee's characterization of the

Complaint as a turnover action within the Court's core jurisdiction.  Instead, the Court must

---

[57] *Id.* at 166.

[58] In the instant action, the Trustee has not indicated whether he is proceeding under § 542(a) or (b).  *Kids World* involved a § 542(b) action based on a *quantum meruit* theory requiring allegations that an entity owes a debt that is matured, payable on demand or payable on order.  11 U.S.C. § 542(b).

[59] *See Porter-Hayden Co. v. First State Mgmt. Grp., Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 732 (Bankr. D. Md. 2004) ("The characterization of a lawsuit as a proceeding to compel turnover, therefore, is not dispositive of whether the action constitutes a core proceeding; rather, this court must look behind the characterization to determine that in fact a turnover proceeding is warranted.").

[60] *See Nat'l Enters. v. Koger P'ship (In re Nat'l Enters., Inc.)*, 128 B.R. 956, 959 (E.D. Va. 1991), in which Judge Merhige found that § 542(b) creates a cause of action for turnover of "matured debts," for example, for judgments already obtained or for funds held in trust.  Notably, Judge Merhige also stated that "for an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt."  *Id.* at 959.

[61] *See Philadelphia Entm't*, 549 B.R. at 150 ("No matter how strenuously the Trustee may make its arguments, this Court must admit, at least at this stage of the litigation, that reasonable minds may differ as to the application of the Gaming Law to the Debtor's alleged property interest in the License Fee.  Indubitably, the Debtor's alleged interest in a refund of the License Fee is subject to a bona fide dispute and therefore, the Complaint allegations cannot establish the existence of a matured debt.")  *Cf. Kids World*, 342 B.R. at 163 ("A dispute as to the existence of a debt is a question that can be decided during the course of a turnover proceeding.")  The Court is of the opinion that *Philadelphia Entertainment* and *Kids World* are consistent in requiring that the allegations of a §542(b) complaint must allege the existence of a mature debt in order to overcome a motion to dismiss; however, to the extent the opinions conflict, the Court adopts the reasoning set forth in *Philadelphia Entertainment*.  The Court notes that *Kids World* was decided by the District Court for the Western District of Kentucky, which is located in the Sixth Circuit.  That court has recognized that 11 U.S.C. § 106(a) represents a valid Congressional abrogation of state sovereign immunity.  *Hood v. Tenn. Student Assistance Corp (In re Hood)*, 319 F.3d 755, 767 (6th Cir. 2003), *aff'd on other grounds*, 541 U.S. 440 (2004).  *See also Vt. Dep't of Taxes v. Quality Stores, Inc. (In re Quality Stores, Inc.)*, 354 B.R. 840, 843 (W.D. Mich. 2006) ("[The state ignores t]he existence of binding Sixth Circuit precedent holding that the abrogation of sovereign immunity in § 106(a) is a valid exercise of Congressional power.  *Hood*, 319 F.3d at 767.  The Supreme Court did not vacate or reverse this holding in *Hood* or in *Katz*.  On each occasion the Supreme Court declined to rule on the validity of § 106(a) and affirmed the Sixth Circuit's decision on other grounds.  This Court is therefore bound by the Sixth Circuit's opinion in *Hood*.")  Notwithstanding the *Kids World* court's apparent sole reliance on *Katz* rather than *Hood*, to deny the state's sovereign immunity defense, the split between the Fourth Circuit and the Sixth Circuit over the constitutionality of § 106(a) adds to this Court's reluctance to give meaningful weight to Sixth Circuit precedent.

examine the substance of the allegations rather than accept legal conclusions that may be couched as factual allegations.[62]

Paragraph 26 of the Complaint, alleging that this Court may determine the bankruptcy estate's right to the tax refunds pursuant to 11 U.S.C. § 505, suggests that the tax refunds are not yet the undisputed property of the estate.  If that is the case, then the Trustee may be seeking to enforce the Debtors' rights to seek the tax refunds under state tax law in the guise of a turnover action, something the court in *Philadelphia Entertainment* correctly found to be "an improper attempt to avoid the application of sovereign immunity and to obtain the adjudication of the Debtor's underlying non-bankruptcy causes of action that the Trustee believes entitles the Debtor to a refund . . . ."[63]  If, however, the Complaint alleges facts that establish the existence of an undisputed right of one or more of the Debtors to the claimed tax refunds, then there may be a viable cause of action that, under *Katz,* survives the defense of sovereign immunity.

The Trustee alleges that the Settlement Agreement "resolved all claims and demands" that the Tax Department asserted in the Missouri Bankruptcy Court in connection with the Prior Cases.[64]  He also alleges that the Tax Department's refusal to pay the tax refunds was based "in part" on its understanding that the refund claims were released by the Debtors pursuant to the terms of the Settlement Agreement,[65] an assertion that the Tax Department subsequently conceded was not correct.[66]

In its Motion to Dismiss, the Tax Department states that all of the claimed refunds "date back to periods prior to or during Patriot's first bankruptcy case."[67]  As to Catenary's claim, the

---

[62] 549 B.R. at 143.
[63] *Id*.
[64] Complaint, ¶¶ 9, 10.
[65] Complaint, para 17.
[66] Complaint, para 18.
[67] Motion to Dismiss, p.4.

Tax Department asserts that Catenary's refund was set off against other outstanding tax obligations before the Prior Cases were filed.[68]  Regarding Coyote's refund claim, the Tax Department contends that Coyote failed to elect either a refund or a credit for its overpayment, as required under state law.[69]  With respect to Panther, the Tax Department claims that an appeal of its denial of the refund was pending with the Office of Tax Appeals and was stayed by the second bankruptcy filing.[70]  While not directly addressing the Patriot refund claim, the Tax Department contends that at least $10,000,000 remains unpaid in connection with various debtors' obligations under the Settlement Agreement.[71]

The inadequacies of the Complaint are apparent when one considers that the Trustee merely asserts that he has demanded the tax refunds, that the Tax Department has conceded that the Settlement Agreement did not include a release of the Trustee's claim, and that the refunds constitute property of the estate that are now due and owing.  The Trustee's allegations and supporting exhibits may very well support an argument that he is entitled to the refunds claimed, but they do not establish undisputed ownership as required for a § 542 turnover proceeding.[72]  Paragraph 26 of the Complaint, asserting that the Court is not barred from determining the Trustee's right to a tax refund by virtue of 11 U.S.C. § 505(a)(2)(B), implicitly acknowledges that the Trustee is asking the Court to determine such right.  Were the Court to do so, it would be enabling the Trustee to skirt the Fourth Circuit's decisions in *Schlossberg* and *NVR* beyond the

---

[68] Motion to Dismiss, p. 5.

[69] Motion to Dismiss, p. 6.

[70] Motion to Dismiss, p. 7.  The Trustee concurs that the second bankruptcy filing stayed Panther's appeal of the Tax Department's refund denial.  *See* Response in Opposition to West Virginia State Department's Motion to Dismiss, page 7.

[71] The Trustee asserts that the Tax Department offset the Patriot refund but did not specify the obligation against which it was set off.  *See id.* at 16.

[72] See *Philadelphia Entm't*, 549 B.R. at 146 ("At best, the Trustee may argue from these facts that it is entitled to a refund.  However, the existence of a colorable claim to property does not establish undisputed ownership for purposes of a §542 proceeding.").

scope of the "consent by ratification" doctrine set forth in *Katz*.[73]  Accordingly, the Court finds

that the Trustee has failed to state a claim for the relief sought.[74]

It is uncontroverted that the Tax Department has not filed claims in the bankruptcy case

presently pending before this Court.  Presumably, it is for that reason that neither party has

addressed whether the Tax Department waived its sovereign immunity by consenting to federal

bankruptcy jurisdiction.  The Court, however, believes that it is appropriate to consider the

consequences of the Tax Department's actions, including its filing of proofs of claim, in the Prior

Cases.

It is well established that a state may consent to jurisdiction in federal court through its

affirmative conduct.[75]  "It is traditional bankruptcy law that he who invokes the aid of the

bankruptcy court by offering a proof of claim and demanding its allowance must abide the

consequences of that procedure."[76]

---

[73] *See Fla. Dep't of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1085 (11th Cir. 2011) ("After *Katz*, then, courts faced with state-sovereign–immunity questions in bankruptcy proceedings should limit their focus to the 'litigation waiver' theory and the 'consent by ratification' theory.").

[74] The Court notes approvingly a comment of the Bankruptcy Court for the Southern District of New York in *In re Metromedia Fiber Network, Inc. v. Various State and Local Taxing Auths. (In re Metromedia Fiber Network, Inc.)*, 299 B.R. 251 (Bankr. S.D.N.Y. 2003), a case cited by the Tax Department and decided prior to the Supreme Court's decision in *Katz*.  After granting a motion to dismiss based on sovereign immunity in a case where the debtors challenged property valuations assessed by state taxing authorities, the court stated:

> That is not to say that there is no occasion when a bankruptcy court should exercise the power conferred under Section 505 of the Bankruptcy Code.  A proceeding under Section 505 may be appropriate in many circumstances where a taxing authority has acted in a manner which is arbitrary and capricious, discriminatory, or violative of state or local statutes or rules, or where the taxpayer/debtor has no practical redress for wrongdoing at the local or state level.  However, no such allegations are made in these adversary proceedings.

299 B.R. at 283.  Likewise, in the present case, the Trustee has not alleged that the Tax Department has acted in a manner that is discriminatory or that violates state laws.

[75] *See Gardner v. New Jersey*, 329 U.S. 565, 573–74 (1947); *Schlossberg v. Maryland Comptroller of the Treasury (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140, 1148–49 (4th Cir.1997) ("The Eleventh Amendment ... presents no bar to a state affirmatively entering a federal forum voluntarily to pursue its own interest. But it would violate the fundamental fairness of judicial process to allow a state to proceed in federal court and at the same time strip the defendant of valid defenses because they might be construed to be affirmative claims *against* the state.... For this reason, we hold that to the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a *compulsory* counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum.").

[76] *Gardner v. New Jersey*, 329 U.S. at 573-74.

The Enforcement Motion filed in the Missouri Bankruptcy Court specifically sought clarification and enforcement of the terms of the Settlement Agreement for the sole purpose of recovering the same tax refunds that Catenary, Coyote and Panther are now attempting to recover in the instant proceeding.  In its Response to the Enforcement Motion, the Tax Department raised similar defenses as those that are now being asserted and demanded "strict proof of the refunds claimed by Patriot Coal . . . ."[77]  The Tax Department not only acquiesced to the bankruptcy court's jurisdiction to determine whether it must issue the tax refunds but specifically acknowledged "that jurisdiction before the Bankruptcy Court for the Eastern District of Missouri is proper . . . ."[78]  By filing proofs of claim and thereafter acknowledging that jurisdiction was properly before the Missouri Bankruptcy Court, the Tax Department waived sovereign immunity in the Prior Cases.

In its Motion to Dismiss, the Tax Department states that "[a]ll of the refunds the Liquidating Trustee claims to be due and owing date back to periods prior to or during Patriot's *first* bankruptcy case."[79]  With respect to Catenary's refund claim, it alleges that "the State's exercise of its setoff rights occurred well before Patriot commenced its first bankruptcy cases, and the proof of claim the Tax Department filed in those cases reflected the full amount of the setoffs."[80]  One must conclude, therefore, that the claims being asserted by Catenary, Coyote and Panther arose out of the same transactions or occurrences as those reflected in the Tax Department's proofs of claim.  It is also apparent that the Settlement Agreement approved by the Missouri Bankruptcy Court must be considered, and perhaps interpreted, in order to determine the parties' respective rights.

---

[77] Response to Enforcement Motion (exhibit D of Motion to Dismiss, p. 4, ¶ 16).
[78] *Id*. p. 1, para 2.
[79] Motion to Dismiss, p. 4.
[80] I*d*. at 5.

While it may be argued that the Tax Department has waived sovereign immunity in this proceeding through its actions in the Prior Cases,[81] that would likely not be an issue were this matter to be brought before the Missouri Bankruptcy Court.[82]  This Court's decision is not intended to bar the Debtors from petitioning the Missouri Bankruptcy Court to reopen the Prior Cases pursuant to 11 U.S.C. § 350(b) in order to seek appropriate relief that may, or may not, be available in that court.

## *Abstention*

Inasmuch as the Court has determined that it will grant the Tax Department's Motion to Dismiss due to the failure of the Trustee to state a claim under 11 U.S.C. § 542, it is not necessary to address the Tax Department's alternative request that the Court abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1).  Were jurisdiction to exist, however, the submissions of the parties suggest that the factors the Court would consider[83] in determining whether to exercise its discretion to abstain, including the apparent lack of progress in the appropriate state forums, would likely lead to retention.[84]

---

[81] *See Shieldalloy Metallurgical Corp. v. New Jersey Dept. of Envtl. Prot.*, 743 F.Supp.2d 429, 436 (D. N.J. 2010); see *also Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195-96 (9th Cir. 2005) (suggesting that a prior waiver of sovereign immunity may extend to a subsequent suit when the bankruptcy estate's claims arise from the same transaction or occurrence as the state's claim).

[82] *See Hillard Dev. Corp. v. Weinstein (In re Richmond Health Care, Inc.),* 243 B.R. 899 (Bankr. S.D. Fla. 2000) (Commonwealth of Massachusetts' waiver of sovereign immunity in debtor's first chapter 11 case, by filing claims and litigating until reaching a settlement agreement approved by the court, was a waiver of Commonwealth's immunity in second bankruptcy filed after Commonwealth enacted legislation in an attempt to circumvent its obligations under the settlement.  First bankruptcy case was reopened and consolidated with the second case, thereupon establishing jurisdiction over the Commonwealth).

[83] *See Kepley Broscious, PLC v. Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003).

[84] *See Smith v. McLeskey (In re Bay Vista of Va., Inc.)*, 394 B.R. 820 (Bankr. E.D. Va. 2008).

CONCLUSION

For the reasons set forth herein, the Court shall grant the Tax Department's Motion to Dismiss and dismiss the Trustee's Complaint without prejudice.  Until such time as the viability of the Trustee's entitlement to the tax refunds has been properly established, the Trustee's turnover action "is, at best, premature."[85]

Signed: November 22, 2016

_____/s/ Keith L. Phillips_____
United States Bankruptcy Judge

Copies:                                          Entered on Docket:  November 22, 2016

Kevin W. Barrett
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Michael Condyles
Peter J. Barrett
Jeremy S. Williams
Kutak Rock LLP
1111 E. Main Street, Suite 800
Richmond, VA 23219-3500

Stephen E. Hessler
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Avenue
New York, New York 10022

James H.M. Sprayregen, P.C.
William E. Arnault
Stephen C. Hackney
Justin R. Bernbrock
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 North LaSalle
Chicago, Illinois 60654

---

[85] *Philadelphia Entm't*, 549 B.R. at 154.

West Virginia State Tax Department
1206 Quarrier Street
Charleston, VA 25301

Eugene Davis, solely in his capacity as Liquidating Trustee for the PCC Liquidating Trust
c/o Kutak Rock LLP
1111 East Main Street
Suite 800
Richmond, VA 23219